CANADY, J.,
dissenting.
Because I conclude that Citrus Memorial Health Foundation, Inc., is a public corporation that is subject to legislative control, I dissent. I would quash the decision of the First District and adopt the analysis contained in Judge Ray’s well-reasoned dissent.
The Citrus County Hospital Board has aptly described “[t]he overarching question in this case” as “whether an entity created by a public body for the sole purpose of conducting a public function involving public property and funded by public money can unilaterally remove itself from legislative oversight of the use of public money and the operation of the public function.” Citrus Cnty. Hosp. Bd., Inc. v. Citrus Mem’l Health Found., Inc., No. SC13-411, Initial Brief of Appellant at 1 (Fla. Apr. 29, 2013). That question should be answered in the negative. The majority’s decision to the contrary departs from the understanding of the constitutional prohibition on laws impairing the obligation of contracts that has been established for nearly two centuries. The result is that the Legislature is ousted from its proper role of ensuring that the governmental activities of the Hospital Board and the Foundation are conducted in accord with the public interest.
In Trustees of Dartmouth College v. Woodward, 11 U.S. 518, 4 Wheat. 518, 4 L.Ed. 629 (1819), the Supreme Court recognized that the prohibition on state legislation impairing the obligation of contracts does not proscribe legislative interference with contractual rights of public corporations. In deciding that Dartmouth College was a private charity whose corporate charter was subject to the protection of the Contract Clause, the court relied on a distinction between public and private corporations. In his opinion for the court, Chief Justice Marshall acknowledged that “the framers of the [Constitution did not intend to restrain the States in the regulation of their civil institutions, adopted for internal government.” Id. at 629. Accordingly, Chief Justice Marshall reasoned that
[i]f the act of incorporation [of Dartmouth College] be a grant of political power, if it create a civil institution, to be employed in the administration of the government, or if the funds-of the college be public property, ... the subject is one in which the legislature of the state may act according to its own judgment, unrestrained by any limitation of its power imposed by the [Constitution of the United States.
Id. at 629-30.
Chief Justice Marshall went on, however, to conclude that Dartmouth was not such a “civil institution” but was instead “a private eleemosynary institution,” the funds of which “consisted entirely of private donations.” Id. at 632-41. Chief Justice Marshall explained that the grant by government of a “charter of incorporation” did not determine the “character of the institution.” Id. at 638. It thus could not be concluded that Dartmouth had the character of a civil institution simply on the ground that it had been granted a royal corporate charter. “The incorporating act” did not “change the character of a private eleemosynary institution” into a civil institution. Id. at 638-39. In elucidating this conclusion, Chief Justice Marshall observed:
*1110 The character of civil institutions does not grow out of their incorporation, but out of the manner in which they are formed, and the objects for which they are created. The right to change them is not founded on their being incorporated, but on their being the instruments of government, created for its purposes. The same institutions, created for the same objects, though not incorporated, would be public institutions, and, of course, be. controllable by the legislature.
Id. at 638 (emphasis added).
Chief Justice Marshall thus accepted the view that “laws concerning civil institutions ... must change with circumstances, and be modified by ordinary legislation” and that such laws “deeply concern the public.” Id. at 627.. “[T]o preserve good government, the public judgment must control” with respect to such laws. Id. If the Contract Clause were allowed to encroach into the realm of a state’s regulation of its civil institutions, “the clause would be an unprofitable and vexatious interference with the internal concerns of a State.” Id. at 628. No conceivable reason supports interpreting Florida’s Contract Clause differently. And the logic of Chief Justice Marshall’s reasoning regarding the Contract Clause defeats any due process claim against a state by a public corporation of the state.
Here, the Foundation is a civil institution — that is, a public corporation-and therefore is -“controllable by the legislature.” Its status as a public corporation, an “instrumente ] of government,” is made manifest by “the manner in which [it was] formed, and the objects for which [it was] created.” Woodward, 17 U.S. at 638. Judge Ray described the undeniable realities of the Foundation’s existence:
[The Foundation] was not voluntarily created by private citizens for their own benefit or for the benefit of any private interests whatsoever. As the Foundation has admitted, the Hospital Board created the Foundation for the purpose of fulfilling the Hospital Board’s public function of providing hospital services in Citrus County, and it still exists for that sole purpose. The Foundation has no shareholders, and the Hospital Board is its only member. As the Hospital Board has aptly described the relationship, the Hospital Board essentially restructured itself when it executed the Lease Agreement and Agreement for Hospital Care. This situation was not one where a special taxing district competitively bid the outsourcing of a public function and entered into [an] “arm’s length” bilateral contract with a private company.
Citrus Mem’l Health Found., Inc., 108 So.3d at 680.
It is of no significance that the Foundation was organized by the Hospital Board as a not-for-profit corporation under chapter 617, Florida Statutes, and not established directly by an act of the Legislature. There is simply no authority to support the conclusion that a not-for-profit corporation formed under chapter 617 will— simply because of that formality — be legally deemed not to be a public corporation. As Judge Ray further explained: “[W]hether a corporation is created directly by the State, or by an arm of the State, seems to be a distinction without a difference when, as here, the sole and exclusive purpose of the corporation is to carry out a public function for the benefit of the public.” Id. The Foundation may have been structured to avoid certain requirements that might otherwise have fallen on the Hospital Board as a governmental entity, and the Foundation may have received some charitable contributions. But those circumstances do not alter the essential character of the Foundation. The creation of the Foundation by the Hospital Board *1111 for a governmental purpose points to the inescapable conclusion that — for purposes of the Contract Clause — the Foundation is a public corporation. The opposite conclusion reached by the First District and the majority exalts incidental circumstances over the essential character of the Foundation.
At bottom, as Judge Ray recognized, there is no private property interest or right that is impaired by the legislation affecting the Foundation that the majority declares unconstitutional. As Chief Justice Marshall stated, the Contract Clause was designed “to restrain the legislature in [the] future from violating the right to property” and therefore concerns “contracts respecting property, under which some individual could claim a right to something beneficial to himself.” Woodward, 17 U.S. at 628. No one can make such a claim here. Any person involved with the Foundation was chargeable with knowledge that the Foundation was established as a public corporation to carry out a governmental purpose, as distinct from a private not-for-profit corporation established to carry out private charitable activities. Whatever private interest any person — including those who made charitable contributions — might assert regarding the relationship between the Hospital Board and the Foundation is negated by the public character of the Foundation.
In this context, the majority’s application of the Contract Clause does not protect any private contract right. Instead, it results in “an unprofitable and vexatious interference with the internal concerns of a State.” Id. at 628.